THOMAS HASSALL, complainant,

*v.*

UNITCO POTTERY COMPANY, defendant.

[Decided November 20th, 1925.]

Corporations—Insolvency—Assessment of Shareholders—One Shareholder Claims Unpaid Balance of $700. of His Subscription of Twenty-five Shares Should Not be Collected, First, Because There Were Misrepresentations Regarding Their Value—If So He Elected Not to Rescind Contract—Second, Because He Was Prevented From Performing His Contract to Pay For the Shares in Services—Agreement Provided That Payment Must be Made in Cash or Services, But Does Not Specify Who Shall Elect as Between Cash and Services, Nor Has Defendant Shown That He Made Any Election —Third, Subscription For Twenty-Five Shares is Divisible— Subscription Not Divisible and Defendant Cannot Claim Ownership in Only 18 Shares—Other Defendants Who Paid Subscriptions in Property Found to Have Conveyed Property of Fair Value of Their Subscriptions.

On proceedings to levy assessment against stockholders.

*Mr. Norman T. Rogers,* receiver, *pro se.*

*Mr. Harvey Satterthwaite,* for the respondents, Denelsbeck et al.

*Mr. Walter H. Bacon, Jr.,* for the respondent Hassall.

BUCHANAN, V. C.

The receiver of the insolvent Unitco Pottery Company has filed a petition for an order to levy an assessment against the respondent stockholders or subscribers to stock of the insolvent company in respect of alleged unpaid portions of the purchase price of the stock. All of the stockholders have appeared on the return of the order to show cause. No

formal answers to the petition were filed, but by consent of all parties the affidavits filed by respondents were deemed answers, and the determination was to be made from the facts as alleged in the several affidavits and the additional testimony taken in open court.

It appears on the hearing that the receiver has sold all the assets and collected all the accounts except two, aggregating $123.25; that he has paid all the preferred claims except $59.75; that there are claims of general creditors aggregating $1,146.25; that he has on hand $1,302.80, plus the two uncollected accounts receivable, which are in process of settlement. If the net receipts from these latter be estimated at fifty per cent., and allowance be made for the further accrual of interest on the claims of creditors up to the time when payment thereof can be made, it is evident that the receiver would have, if the claims be paid, only about $100 to cover the taxed costs of complainant and of the receiver and the receiver's compensation and his future expenses, and the expense of possible litigation in enforcing the assessment if one be made.

The sum required to meet these additional disbursements cannot be ascertained with exactitude, it must needs be reasonably estimated at a figure adequate to cover them. *Holcombe* v. *Trenton White City Co., 80 N. J. Eq. 122.* The additional sum required in the present case reasonably appears to be about $1,000, and I so determine.

The next question for determination is whether there are unpaid stock subscriptions or stock issued without full payment, and, if so, the names of such stockholders and the amounts respectively due from them. It appears that the respondents William G. Amisson, Sr., John Morgan, William G. Amisson, Jr., and Joseph G. Penelsbeck were the original incorporators, and each subscribed for twenty shares of stock (par value $100 per share), which was subsequently issued to them. The respondent, Hassall, later subscribed for twenty-five shares, which was issued to him.

Considering first the Hassall situation: The subscription contract between him and the company was that he should

buy twenty-five shares at $100 per share, pay $1,800 in cash and pay the balance of $700 "within one year from this date, October 13th, 1924, in cash or services or in part each." He received the stock and paid the $1,800 on October 14th, 1924. Admittedly, he has never paid the $700 either in cash or in services or otherwise.

He contends, in the first place, that he was induced to purchase this stock by the false representations of the president of the company, and, hence, he should be relieved from liability. One sufficient answer is that it does not appear that the representations which he says were so made to him, were, in fact, untrue. Another equally sufficient answer is that, even if misrepresentations were made, he did not elect to rescind, but, on the contrary, has elected to affirm the contract. He it was who filed the bill against the company asking decree of insolvency, and in that bill he alleges himself a stockholder. True, he says he holds only eighteen shares, but the contract was an indivisible one for twenty-five shares. He cannot split it up. His first contention is without merit.

His second contention is that he was prevented by the company from performing his agreement to pay for the stock. He says he was employed by the company as its general manager in October, 1924, and so continued for eleven weeks, and was then discharged by the company without fault on his part, and has not since been given the opportunity to perform services for the company. Taking all this to be true, there is nothing therein to excuse him from payment for the stock. He does not say, nor does it appear, there was any contract by the company to employ him for any particular length of time as general manager. The contract for the stock does not provide that payment shall be by services as general manager. Neither does the contract specify whose shall be the right to elect as between cash and services. But assuming that that right was to be Hassall's, he has not shown that he made any such election, nor has he shown even that he ever made any tender or offer to perform services of any kind.

I cannot see how this contention could avail Hassall even in a suit against him by the company itself, still less can it suffice in a proceeding by the receiver for the benefit of unpaid creditors.

It is evident, therefore, that there is $700 due from respondent Hassall for unpaid balance on his stock subscription.

As to the other four respondents, their contention is that their original stock subscriptions of $2,000 each were fully paid by property conveyed by them to the corporation. Consideration of the rather considerable evidence on the point leads be to the conclusion that the weight thereof indicates that the property so conveyed was of the fair value of, at least, $8,000 at that time.

There is therefore no unpaid balance in respect of stock due from these four respondents.